```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

  EVANGELOS GERASIMOU,

                    Plaintiff,               MEMORANDUM & ORDER
                                              15-CV-6892(EK)(VMS)

          -against-

  MICHAEL CILLIS, in his individual and
  official capacities, and SCOTT
  BRENES, in his individual and
  official capacities,¹

                    Defendants.

--------------------------------------x
```
ERIC KOMITEE, United States District Judge:

        Plaintiff Evangelos Gerasimou brought this action against the City of New York and two NYPD officers. He alleged various civil-rights violations arising out of a traffic stop on June 16, 2015, during which he was arrested on charges of possessing a forged temporary license plate and operating a vehicle without a license plate. The judge previously assigned to the case ruled on Defendants' summary judgment motion in December 2019, following which only two counts remained: Count Three, alleging false arrest in violation of 42 U.S.C. § 1983,

---

[1] In the parties' proposed joint pretrial order, Plaintiff agreed that the "caption should be amended to include only defendants Brenes and Cillis, as all other defendants were dismissed by the Court on December 17, 2019." ECF No. 34 at 1. The parties also stipulated that Sergeant Brenes's first name is "Scott," not "John." *Id.* Accordingly, the Clerk of Court is directed to amend the caption of this action by removing the City of New York as a defendant and replacing "John Brenes" with "Scott Brenes."

and Count Four, alleging failure to intervene in violation of 42 U.S.C. §§ 1983 and 1986 — in both cases against the individual officers.[2]  ECF No. 28.  No claims remain pending against the City.[3]

The two officers now seek reconsideration of the denial of summary judgment on the two remaining counts.  They argue that both claims are untenable because they had probable cause to arrest and, in any event, their actions are shielded by the doctrine of qualified immunity.  *See* ECF No. 37.  For the following reasons, I grant their motion and dismiss the remaining claims.

## I.  Background[4]

On the night of June 16, 2015, Officer Cillis and Sergeant Brenes were on patrol in Queens when they observed

---

[2] These two remaining claims are both asserted against both officers; they refer to "the Defendants" or "the Defendant Officers" together.  *See* ECF No. 1 ¶¶ 42-55 (Count Three), 56-65 (Count Four).

[3] Plaintiff initially brought additional Section 1983 claims for excessive force, abuse of process, malicious prosecution, seizure, and municipal liability, as well as conspiracy claims under 42 U.S.C. § 1985.  In December 2019, Judge William F. Kuntz II granted summary judgment on all but the false-arrest and failure to intervene claims.  *See* ECF No. 28.  This case was transferred to the undersigned in January 2020.

[4] The facts in this order are drawn from the parties' submissions in connection with the motion for summary judgment, including Defendants' Local Rule 56.1 Statement ("Def. 56.1" (ECF No. 21)), and Plaintiff's opposition thereto ("Pl. 56.1" (ECF No. 25)).  I construe the facts in the light most favorable to Plaintiff.  Citations to a party's Rule 56.1 Statement incorporate by reference the documents cited therein.  For convenience, Defendants' supporting memorandum of law will be referred to as "Def. Br." (ECF No. 22) and Plaintiff's opposition submission as "Pl. Opp." (ECF No. 24).

Gerasimou's vehicle. Gerasimou was driving a Mercedes-Benz that did not have a "license plate displayed where a license plate should be displayed on the vehicle." Def. 56.1 ¶ 8; Pl. 56.1 ¶ 4. The officers stopped Gerasimou's vehicle. Def. 56.1 ¶ 10. As Officer Cillis approached the car, he saw a temporary paper license plate taped to the interior of the rear window. *Id.* ¶¶ 11-12; Pl. 56.1 ¶ 5. After obtaining Gerasimou's registration and insurance documents, the officers retrieved the temporary plate from inside the rear window. Def. 56.1 ¶ 13.

Officer Cillis reviewed the temporary license plate and noticed that certain words were faded or missing, and parts of the first letter of the license plate's alphanumeric sequence were cut off. *Id.* ¶ 14; *see also* photograph below. Based on this, Cillis believed that the document was forged. *See* Criminal Complaint dated June 22, 2015, ECF No. 20-7. Cillis testified that he had received NYPD training on how to recognize forged documents, and that he had made previous arrests for forgeries. Cillis Dep. 93:4-96:5, ECF No. 23-2. Sergeant Brenes agreed with Cillis's determination. Def. 56.1 ¶ 15. Brenes testified that in his experience, officers assessing a government document for forgery generally consider whether the document appears to be a photocopy, whether any misspellings appear, or, in the case of a paper tag, whether any information is cut off. *Id.* ¶ 16; Brenes Dep. 58:16-59:1, 59:20-25, ECF No.

3

23-6.  "If it's cut off," he explained, "then it's been tampered with."  Brenes Dep. 59:14-15.

The officers informed Gerasimou that the paper license plate was a "fraudulent instrument" and a "fake plate."  Def. 56.1 ¶ 18.  Gerasimou responded that the license plate had been issued by a Mercedes-Benz dealership in Delaware, and he urged the officers to call the dealership to verify its validity.  Pl. 56.1 ¶¶ 14-15.  The officers called the dealership, but no one answered.  Def. 56.1 ¶ 23.  Officer Cillis arrested Gerasimou for Possession of a Forged Instrument in the Third Degree, in violation of N.Y.P.L. § 170.20, and for operating a vehicle without a license place, in violation of V.T.L. § 402-1.  *Id.* ¶ 24.  Gerasimou was arraigned on June 26, 2015, but the charges were ultimately dismissed.  *Id.* ¶ 28-29.

Plaintiff testified at his deposition that the Mercedes was, in fact, leased from the Delaware car dealership and the temporary license plate was valid, and Defendants do not dispute that contention at this stage.  Gerasimou Dep. 26:12-28:21, ECF No. 23-3.

## II.  Legal Standard

Summary judgment is appropriate if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  "A fact is material for these

4

purposes if it might affect the outcome of the suit under the governing law. An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001).[5]

The movant has the burden of demonstrating the absence of a question of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "If the moving party meets this burden, the non-moving party must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998). If the non-moving party fails to do so, the claim must be dismissed. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A motion for reconsideration "is generally not favored and is properly granted only upon a showing of exceptional circumstances." *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir. 2004). Typical grounds for reconsideration include "an intervening change of controlling law, the availability of new

---

[5] Unless otherwise noted, when quoting judicial decisions this order omits all alterations, citations, footnotes, and internal quotation marks.

5

evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). These limitations are less restrictive, however, when the challenged decision is an interlocutory order such as the denial of summary judgment. *See Vornado Realty Tr. v. Marubeni Sustainable Energy, Inc.*, 987 F. Supp. 2d 267, 276 (E.D.N.Y. 2013) ("Because the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.").

### III. Discussion

The police officers contend that they are entitled to qualified immunity on Plaintiff's false-arrest and failure-to-intervene claims. Under Supreme Court and Second Circuit precedent, "[t]he doctrine of qualified immunity protects government officials from suit if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). To determine whether the doctrine applies, a court must assess: "(1) whether [a] plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was 'clearly

6

established'; and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." *Id.* "The objective reasonableness test is met — and the defendant is entitled to immunity — if officers of reasonable competence could disagree on the legality of the defendant's actions." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 216 (2d Cir. 2000). This standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because Defendants have invoked the doctrine of qualified immunity, I review the merits of Plaintiff's false-arrest and failure to intervene claims through this lens.

**A.   Count Three: Section 1983 Claim for False Arrest**

"Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). "A Section 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Under New York law, a plaintiff alleging false arrest must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). Only the fourth element is at issue on the current motions.

The existence of probable cause precludes a finding for the plaintiff on that element; it is therefore a "complete defense" to a false-arrest claim. *See Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999). Probable cause can exist "even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994). Once a police officer has a reasonable basis to believe that he has probable cause to arrest, the officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2015). An arresting officer is "entitled to qualified immunity from a suit for damages if he can establish that there was *arguable* probable cause to arrest." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (emphasis added).

Here, Officer Cillis and Sergeant Brenes had at least arguable probable cause to arrest Gerasimou for possession of a forged instrument. A person is guilty of criminal possession of

8

a forged instrument in the third degree when, "with knowledge that it is forged and with intent to defraud, deceive or injure another, [s]he utters or possesses a forged instrument."  N.Y. Pen. L. § 170.20.  A "forged instrument" is defined as "a written instrument which has been falsely made, completed or altered."  N.Y. Pen. L. § 170.00(7).  "Under Section 170.20, an officer has probable cause if the physical characteristics of the allegedly forged document lead the officer to believe that an individual is knowingly in possession of a forged or fictitious document."  *Ikezi v. City of New York*, No. 14-CV-5905, 2017 WL 1233841, at *12 (E.D.N.Y. Mar. 31, 2017); *see also Xifei Xu v. City of New York*, No. 18-CV-1222, 2020 WL 2088301, at *6 (S.D.N.Y. Apr. 30, 2020) ("[B]ased on [the officer's] observation and training, the appearance of Plaintiff's Pennsylvania learner's permit," which bore text that had been whited out and stamped over, "was sufficient to establish probable cause for his arrest in violation of § 170.20.").

The physical characteristics of Gerasimou's tag at least arguably met that standard.  It is undisputed that portions of the temporary paper license plate were cut off and faded.  A photograph of the document shows that half of the word "The" in "The First State" (*see* notation "A" below), the letter "I" in "Issue Date" (*see* "B" below), and the left edges of the letter "X" (*see* "C" below) are missing:

9



Def. Exhibit J, ECF No. 20-10. Officer Cillis testified that, based on his NYPD training and prior experience with forgery arrests, the fact that words were cut off led him to believe that the document was forged. Cillis Dep. 93:4-96:5; *see also* Criminal Complaint, ECF No. 20-7 (stating that Gerasimou "provided a forged Delaware temporary license plate and said license plate is forged in that the words 'Issue' and 'The First State' are cut off and not visible"). And Sergeant Brenes testified that where "certain information [is] cut off on . . .

10

a paper plate," this may indicate that the document is forged. Brenes Dep. 58:16-59:2.[6]

The physical appearance of the document thus gave the officers a reasonable basis to conclude the document was forged. *See Thompson v. City of New York*, 70 N.Y.S.3d 830 (1st Dep't 2018) ("[T]he police officer's observations, based on his training and experience with similar license plates[] provided a reasonable basis for him to conclude that plaintiff's temporary plate was forged, granting him probable cause to arrest plaintiff.").

This Court has not found – nor has Plaintiff pointed to – any case indicating that the officers violated clearly established law by arresting Plaintiff based on the appearance of his license plate. Indeed, several New York cases demonstrate that similar physical discrepancies can serve as the basis for a Section 170.20 violation. *E.g.*, *People v. Doudoulgou*, 126 N.Y.S.3d 839 (1st Dep't 2020) (complaint was facially sufficient because it set forth "the bases for the officer's knowledge, in addition to his training and experience, that [several] items [were] forged," including that "the font on

---

[6] That Sergeant Brenes was present and agreed with Cillis's determination further supports Cillis's defense. *E.g.*, *Hart v. City of New York*, No. 11-CV-4678, 2013 WL 6139648, at *4-5 (S.D.N.Y. Nov. 18, 2013) (concluding that the defendant had probable cause in part because the information was relayed to and approved by NYPD sergeants).

11

the licence plate was larger than the font on a genuine plate, and the plate lacked a hologram and issue date"); *People v. Xirum*, 993 N.Y.S.2d 627, 628 (Sup. Ct. 2014) (defendant was charged with Section 170.20 violation after officer observed him "driving a vehicle with what is alleged to be a photocopied, forged Pennsylvania 30-day temporary in-transit license plate"); *People v. Mansilla*, No. 2006-NY042684, 2006 WL 2728657, at *1 (N.Y. Crim. Ct. 2006) (officer had reasonable cause to believe defendants gave him forged resident alien cards because they "appear[ed] to be laminated photocopies, and authentic cards are of superior paper quality," the printing was "of an inferior quality to authentic cards," and "none of the cards . . . had a seal"). At the very least, these cases demonstrate that the law was not clearly established to the contrary. Or, said differently, "officers of reasonable competence could disagree on the legality" of Gerasimou's arrest. *Rohman*, 215 F.3d at 216.

Gerasimou primarily argues that the officers lacked probable cause because they possessed no evidence of his intent. This argument contravenes settled law. An officer can have probable cause to arrest "even without specific evidence on the elements of knowledge and intent that will have to be proved to secure a conviction at trial," so long as the officer has evidence that a defendant has engaged in conduct proscribed by

12

law. *McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005). In the context of a Section 170.20 violation, courts have held that it is not necessary for an officer to believe the suspect *knew* he possessed a forged instrument. *E.g.*, *Thompson*, 70 N.Y.S.3d at 830 (noting that "it was not necessary for the police to show that plaintiff had the intent necessary to secure a conviction of third-degree criminal possession of a forged instrument"); *Medina v. City of New York*, No. 20-CV-0797, 2021 WL 1700323, at *3 (S.D.N.Y. Apr. 29, 2021) (same); *Xifei Xu*, 2020 WL 2088301, at *6 (same). Because it was objectively reasonable for the officers to believe they had probable cause to arrest Gerasimou, they are entitled to qualified immunity. Summary judgment is thus granted as to Gerasimou's false-arrest claims.[7]

---

[7] Gerasimou's complaint references state-law violations at times. At one point, the complaint mentions "the false arrest . . . and violation of the laws of the State of New York and federal law." ECF No. 1 ¶ 90. I do not read the complaint to assert independent state-law claims for false arrest or failure to intervene. Even if it had, Plaintiff conceded in the parties' proposed joint pretrial order that only federal claims remain: "This is an action under federal law pursuant to 42 U.S.C. § 1983 and § 1988." ECF No. 34 at 2. And in any event, a state-law false-arrest claim would fail for the same reason as Gerasimou's federal claim, given New York State's own qualified immunity doctrine. New York law "grant[s] government officials qualified immunity on state-law claims except where the officials' actions are undertaken in bad faith or without a reasonable basis." *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006). Given my conclusion that it was reasonable for the officers to believe they had probable cause to arrest, this doctrine would apply to a state-law claim as well.

## B. Count Four: Section 1983 and 1986 Failure-to-Intervene Claim

Gerasimou's failure-to-intervene claim also fails. A police officer may be liable for failure to intervene under Section 1983 where "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd*, 461 F. App'x 18 (2d Cir. 2012). Given the second element, probable cause again defeats liability, and an officer's awareness of "arguable" probable cause will entitle him or her to qualified immunity. "A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's clearly established statutory or constitutional rights of which a reasonable person would have known." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997); *see also Grice v. McVeigh*, 873 F.3d 162, 169 (2d Cir. 2017); *Corso v. City of New York*, No. 17-CV-6096, 2018 WL 4538899, at *11 (S.D.N.Y. Sept. 20, 2018); *cf. Jackson v. Tellado*, 236 F. Supp. 3d 636, 656 (E.D.N.Y. 2017) (despite granting qualified immunity to arresting officers based on arguable probable cause, the court denied qualified immunity to

observing officer who, unlike the arresting officers, was not aware of the facts reasonably indicating its lawfulness). Because both Cillis and Brenes had arguable probable cause, Gerasimou "cannot establish that a reasonable person in the officers' position would know of any constitutional violation such that they would have a duty to intervene." *Anderson v. City of New York*, No. 15-CV-6246, 2017 WL 4712790, at *7 (S.D.N.Y. Sept. 25, 2017). Accordingly, this claim, too, must be dismissed.

Likewise, the existence of arguable probable cause is fatal to Gerasimou's attempt to hold the officers liable for "neglect to prevent" under Section 1986. Given that no violation of clearly established law transpired, there could be no clearly established obligation to prevent one. Moreover, Section 1986 explicitly requires an underlying conspiracy under 42 U.S.C. § 1985. *See* 42 U.S.C. § 1986; *see also Brito v. Arthur*, 403 F. App'x 620, 621 (2d Cir. 2010) (identifying "the existence of a conspiracy" as an essential element of a Section 1986 claim). Because the judge previously assigned to this case already dismissed Gerasimou's Section 1985 claim, no underlying conspiracy claim remains. *See* ECF No. 28. Summary judgment is therefore granted as to Gerasimou's cause of action for failure to intervene.

15

## IV.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion to reconsider and dismisses Plaintiff's remaining claims.  Because no claims remain, the Clerk of Court is respectfully directed to enter judgment and close the case.  The Clerk of Court is also directed to amend the caption of this action to remove the City of New York as a defendant and replace "John Brenes" with "Scott Brenes."

SO ORDERED.

                                                                                /s/ Eric Komitee
                                                    ERIC KOMITEE
                                                    United States District Judge

Dated:    January 12, 2022
          Brooklyn, New York